UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BIG D BUILDERS, INC., an Idaho corporation, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN ZURICH INSURANCE COMPANY, a foreign insurance company, <br><br> Defendant. | Case No. 1:25-cv-00159-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Big D Builders, Inc. sued Defendant American Zurich Insurance Company due to an insurance coverage dispute resulting from the construction of a new airplane hangar at the Boise Airport. Big D was the general contractor for the construction of the hangar, which collapsed prior to completion and caused extensive property damage. American Zurich, who sold Big D a builder's risk insurance policy for the construction project, accepted coverage for most of the damage but not for damage to footings and columns installed prior to the start date of the insurance policy. Big D does not dispute that these footings and columns were installed before the policy period began, but it nevertheless seeks coverage for them.

**MEMORANDUM DECISION AND ORDER - 1**

Big D filed a motion for partial summary judgment regarding coverage for these footings and columns and American Zurich filed a cross-motion for the same. The Court heard oral argument on both motions. As explained below, the Court grants Big D's motion and denies American Zurich's cross-motion for partial summary judgment.

## BACKGROUND

Big D was hired to build the new airplane hangar by erecting a 39,000 square foot structure. Before Big D began construction, the site of the hangar did not contain any pre-existing structures or buildings.

The builder's risk insurance policy that American Zurich sold Big D covered certain aspects of the construction project. It provided up to $6,300,000 of coverage for "[a]ny one building or structure" and the policy period was December 28, 2023, to December 28, 2024. The "coverage" portion of the builder's risk insurance contract stated:

We will pay for direct physical loss or damage to Covered Property from a Covered Cause of Loss described in this Coverage Form.

1. **Covered Property**, as used in the Coverage Form, means:

   Property which has been installed or is to be installed in any "commercial structure" . . . at the location which you have reported to us. This includes:

   . . .

**MEMORANDUM DECISION AND ORDER - 2**

    f. Foundations of buildings and foundations of structures in the course of construction.

  2. **Property Not Covered**:

    Covered Property does not include:

    a. Existing buildings or structures to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed;

    . . .

    d. "Existing inventory", unless specifically endorsed;

    . . .

The Policy also contains the following relevant definitions:

  2. "Commercial structure" means any structure other than a one to four family dwelling.

  4. "Existing Inventory" means buildings or structures where construction was started and more than 30% of the "total estimated completed value" was completed prior to the inception date of this policy.

  12. "Total estimated completed value" means all costs associated with the building and designing of the Covered Property including labor, "overhead" and materials and if included, "profit".

  In denying coverage for the footings and columns installed prior to the start date of the policy, American Zurich reasoned that these footings and columns were "existing buildings or structures" under the "Property Not Covered" section of the policy.

**MEMORANDUM DECISION AND ORDER - 3**

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Interpretation of an insurance contract" is one such matter of law. *McFarland v. Liberty Ins. Corp.*, 164 Idaho 611, 614 (2019). Thus, ruling on a motion for summary judgment may entail interpreting policy provisions and determining their legal effect. *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 795 (Idaho Ct. App. 1984). Because this Court has jurisdiction based on the diversity of the parties, it must interpret policy provisions in accordance with the substantive law of the state in which it is located. *Am. Triticale, Inc. v. Nytco Servs. Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Where, as here, the parties file cross-motions for summary judgment on the same issue, the court must consider both motions and all evidence submitted by both parties. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Each motion must be considered on its own merits. *Id.*

**MEMORANDUM DECISION AND ORDER - 4**

## ANALYSIS

**1.      Whether the Policy Language Unambiguously Provides Coverage**

Under Idaho law, a court must first assess whether the insurance policy language is "clear and unambiguous" and, if it is, determine coverage "as a matter of law, according to the plain meaning of the words used." *Farm Bureau Mut. Ins. Co. v. Eisenman*, 153 Idaho 549, 552 (2012).

The policy language at issue here starts with covered property, defined to include that which "has been installed" or is to be installed in a commercial structure. Dkt. 25-2 at 8. American Zurich argues that implicit in the "has been installed" language of the covered property definition is that the property at issue was installed after the start date of the policy. But accepting this argument would require reading into the policy language a limitation that is not there. This the Court is not permitted to do. *ABK, LLC v. Mid-Century Ins. Co.*, 166 Idaho 92, 102 (2019) ("courts may not rewrite an insurance contract for the parties if the language is clear and unambiguous even if the language seems harsh or inequitable"). The actual language of the policy states that property that has been installed is covered.

Taking another tack, American Zurich argues that reading the covered property definition to include property installed prior to the policy's start date

would mean that any property installed on the building site at any time would be covered. True, in theory property could have been installed at any time in the past and still be covered, but it would have to have been part of the hangar project, as this is a single-structure policy written to cover the risk associated with building that hangar. *See* Dkt. 25-2 at 4.

American Zurich also points out that "foundations of buildings and foundations of structures in the course of construction" are specifically included within the definition of covered property. Because of this, American Zurich argues, interpreting property that "has been installed or is to be installed" to include foundations such as footings and columns already installed is illogical, as then all foundations at whatever stage of completion would be covered and there would be no need to specify coverage for those under construction. Dkt. 36 at 10.

But American Zurich overlooks that the list of items included within the definition of covered property does not limit that definition to only those specified items and exclude all others from coverage. *See* Dkt. 25-2 at 8. Moreover, the Court must apply the plain meaning of the terms in the policy, and the meanings of construct and install are different. *Compare* "Construct," Merriam-Webster, available at https://www.merriam-webster.com/dictionary/construct ("to make or form by combining or arranging parts or elements"), *with* "Install," Merriam-

**MEMORANDUM DECISION AND ORDER - 6**

Webster, available at https://www.merriam-webster.com/dictionary/install ("to set up for use or service"). That differently built foundations could be covered under different aspects of the covered property definition is not illogical. *See Mutual of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235 (1996) (adopting the "logical and consistent" interpretation of the contract). The Court is therefore satisfied that the covered property definition in the policy unambiguously covers any property installed on the hangar site as part of the hangar project.

In this context, Big D, as the insured, has the burden to prove that a claimed loss falls within the applicable policy. *Keiser v. American National Insurance Co.*, 2017 WL 2903343, at *7 (D. Idaho Feb. 27, 2017) (citing *Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 153 Idaho 716, 725 (2012)); *see also* 17A Couch on Ins. § 254:11. In arguing that the footings and columns at issue constitute "covered property" according to the plain meaning of the policy language, Big D has met that burden. The footings and columns at issue unquestionably "ha[d] been installed" at the time of the collapse. And the parties do not dispute that these footings and columns were a part of the future hangar and were installed on the property designated by the policy for building the hangar. The Court thus concludes that Big D has demonstrated that the footings and columns fit within the unambiguous definition of covered property.

**MEMORANDUM DECISION AND ORDER - 7**

Because the footings and columns are covered property, the burden shifts to American Zurich to prove that they are unambiguously excluded from coverage elsewhere in the policy. *See Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 936 P.2d 1342, 1345 (Idaho Ct. App. 1997); *see also* 17A Couch on Ins. § 254:12. American Zurich first argues that the footings and columns are excluded from coverage because they are "[e]xisting . . . structures to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed." This argument is flawed in two ways. First, the footings and columns are not "structures." If they were, the provision in the covered property section of the policy for "foundations of structures" would be nonsensical. "Foundations of structures" indicates that foundations, such as the footings and columns here, are a part of a structure, not structures themselves. *See Mutual of Enumclaw Ins. Co.*, 128 Idaho at 235 (adopting the "logical and consistent" interpretation of the contract).

Contrary to American Zurich's contention, *Salley v. Beshay* does not help it clear this hurdle. 2012 WL 2735961 (N.J. Super. Ct. App. Div. July 10, 2012). In *Salley*, foundations in the course of construction were covered by the policy and the court determined that existing foundations at the time the policy began would not be covered. *Id*. at *4. But this conclusion followed from the provision in the

**MEMORANDUM DECISION AND ORDER - 8**

policy excluding from coverage existing property, defined as "buildings or structures where construction was started or completed prior to the inception date." *Id*. at \*4. This is the type of exclusionary language that The Builders Risk Book—a treatise produced for the insurance industry—instructs insurers who want to exclude existing property from the policy to make explicit in that policy. Dkt. 23-3 at 6. American Zurich did not take such a precaution here.

Second, the footings and columns are a foundational part of the hangar as a whole, so characterizing the hangar as an "addition" or "improvement" to the footings and columns pushes the meanings of those terms beyond their common usage. *See Fisher v. Garrison Prop. & Cas. Ins. Co.*, 162 Idaho 149, 153 (2017) ("common, non-technical words are given the meaning applied by laymen in daily usage . . ."). A useful analogy employed by Big D at argument underscores this point. When siding is installed during the construction of house, it would be unusual for someone to refer to that installation as an "improvement" or "addition" to the frame of the house. Otherwise, this logic could be extended to any aspect of the construction process, as each relates to some other aspect of the work already completed.

Moreover, the terms of the policy provide $6,300,000 in coverage for "new construction," while allotting no amount in coverage for "remodeling," and more

**MEMORANDUM DECISION AND ORDER - 9**

specifically, no amount for "renovations and improvements" and no amount for "existing buildings or structures." Dkt. 25-2 at 4. Yet "renovation" is exactly the word American Zurich uses to describe the work done on a warehouse roof in another case, *Toccoa Ltd. v. N. Am. Roofings Servs., LLC*, which it cites to support its position. 2023 WL 4401545 (E.D. Tex. June 8, 2023). In *Toccoa*, the warehouse already existed, and work was limited to the roof when flooding damaged the lower levels of the pre-existing warehouse. *Id*. at *1-2. It is little wonder then that the court considered such damage to have occurred to an "existing building" undergoing an "addition, alteration, improvement, or repair." *Id*. *7-9. The facts in *Toccoa* therefore are not analogous to those present here, and the Court rejects American Zurich's argument that the footings and columns were "[e]xisting . . . structures to which an addition, alteration, improvement, or repair is being made."

American Zurich alternatively argues that the footings and columns are excluded from coverage as "existing inventory," which is defined as "structures where construction was started and more than 30% of the total estimated completed value was completed prior to the inception date of this policy." Again, though, the footings and columns are not "structures." *See supra* at pages 8-9.

Nor are they inventory. Inventory is defined as "a list of goods on hand," "a catalog of the property of an individual or estate," "a survey of natural resources,"

or "the quantity of goods or materials on hand: stock." *Inventory*, Merriam-Webster, available at https://www.merriam-webster.com/dictionary/inventory. As the footings and columns are neither a "list," "catalog," or "survey," the only definition that could be relevant is "the quantity of goods or materials on hand: stock." American Zurich does not explain how installed footings and columns meet this definition, nor could it, as these installed features are not an accumulation of items once they are installed, rather they are a part of the foundation of a future structure.

Moreover, to constitute existing inventory under the policy, construction of the structure must have been "started and more than 30% of the total estimated completed value . . . completed prior to the inception date of this policy." Dkt. 25-2 at 21. Total estimated completed value is defined in the policy as all costs associated with the building and designing of the Covered Property, including labor, overhead, materials, and, if included, profit. Dkt. 25-2 at 22. The covered property would logically be the hangar, as the policy provides coverage for construction of a single structure valued at $6,300,000. Dkt. 25-2 at 4. And American Zurich does not argue that the footings and columns installed prior to the inception date of the policy here constituted more than 30% of the total estimated value of the hangar. For these reasons, the Court rejects American Zurich's

MEMORANDUM DECISION AND ORDER - 11

argument that the policy unambiguously excluded as not covered those footings and columns installed before the policy began.

**2.      Coverage If the Court Found the Policy Language Ambiguous**

Even if the Court found the policy language to be ambiguous, it would still conclude that the footings and columns at issue are covered by the policy. When such language is ambiguous, the Idaho Supreme Court has provided that "[a]ny ambiguities should be resolved in favor of the insured." *Cherry v. Coregis Ins. Co.*, 146 Idaho 882, 884 (2009). And so, "where language may be given two meanings, one of which permits recovery while the other does not, the policy should be given the construction most favorable to the insured." *Id*. This approach is justified because insurance policies are typically adhesion contracts, which are usually drafted by the insurer and not negotiated.[1] *Farm Bureau Mutual Ins. Co. of Idaho v. Schrock*, 150 Idaho 817, 821 (2011). That said, the Idaho Supreme Court has also noted that in determining the meaning of an ambiguous contract, "the trier of fact must determine what a reasonable person would have understood the language

---

[1] To be sure, if the ambiguous provision in the policy was actually negotiated between the parties, as opposed to being included in a standard policy drafted by the insurer, then the foundation for interpreting the policy against the insurer would crumble and the doctrine would not apply. In that case, the issue of the parties' intent would be left for the jury to decide, as it is in most contract disputes.

to mean and the words used must be construed given their ordinary meaning."
*Clark v. Prudential Property and Casualty Ins. Co.*, 138 Idaho 538, 541 (2003).

After thoroughly reviewing the relevant Idaho decisions, this Court has concluded that if an ambiguity exists in the insurance policy, the Court, not a jury, should resolve the ambiguity, and do so in favor of the insured. *Wells Cargo, Inc. v. Transp. Ins. Co.*, 2012 WL 3112009, at *5 (D. Idaho July 30, 2012). This stands to reason, as "[i]t would make little sense for a court to make the initial determination on whether an insurance policy is ambiguous—which the Idaho Supreme Court unequivocally states the court must do—and then if the court finds that it is ambiguous, ask the jury to resolve that ambiguity, but with an instruction that it must do so by resolving it in favor of the insured." *Id*.

The Idaho Supreme Court later used the approach articulated and applied in *Wells Cargo* and itself construed ambiguous insurance policy language in favor of the insured. *McFarland v. Liberty Ins. Corp.*, 164 Idaho 611 (2019); *BrunoBuilt, Inc. v. Auto-Owners Ins. Co.*, 561 P.3d 888, 903 (2024). *BrunoBuilt* even involved a Builder's Risk policy, as here. Still, the Idaho Supreme Court did not grant summary judgment in either *McFarland* or *BrunoBuilt* but instead reversed the grant of summary judgment to the insurance company defendants in each case and remanded for further proceedings. Moreover, in at least two cases identified by

**MEMORANDUM DECISION AND ORDER - 13**

American Zurich, the Idaho Supreme Court continued to state that juries, as the finders of fact, resolve ambiguous contract terms even after *Wells Cargo*. Dkt. 47 at 3 (citing *Greenwald v. W. Sur. Co.*, 164 Idaho 929, 939 (2019) and *ABK, LLC*, 166 Idaho at 97).

However, in neither of the two cases cited by American Zurich, *Greenwald* and *ABK, LLC*, did the court find the contract language at issue was ambiguous. Rather, in both cases the Idaho Supreme Court stated that juries resolve ambiguous contract terms as part of its restatement of general standards of contract interpretation without grappling with the tension in Idaho law addressed squarely by this Court in *Wells Cargo*. Moreover, in *McFarland*, the court remanded the case, but only after itself construing the policy term at issue in favor of the insured and seemingly only to permit further proceedings on the remaining claims at issue in the case. *See* 434 P.3d at 218 n.1. And in *BrunoBuilt*, the court remanded because there was a question as to whether coverage was in effect at the time the damage occurred. 561 P.3d at 905.

American Zurich also points to a post-*Wells Cargo* decision in which this Court appeared to state that the meaning of an ambiguous provision should be reserved for the trier of fact. Dkt. 47 at 4 (citing *Evanston Ins. Co. v. Bosski, Inc.*, 2017 WL 1158245, at *2 (D. Idaho Mar. 28, 2017)). But that decision involved

MEMORANDUM DECISION AND ORDER - 14

questions of fact, unlike here, as there were "disputes of fact concerning substantial compliance" with a contract provision and a question as to when a claim arose under the terms of the contract. *Evanston Ins. Co.*, 2017 WL 1158245 at *2, 8. Further, the Court in *Evanston* relied on the reasoning in *Clark* to support the notion that Idaho law requires that interpreting ambiguous language is up to the trier of fact. *Id*. at *6. But as this Court explained at length in *Wells Cargo*, the reasoning in *Clark* leaves the question of who should interpret that language open. In *Wells Cargo* this Court went on to clarify that the Court should execute that task under Idaho law and neither *Wells Cargo* nor its reasoning were discussed in *Evanston*.

The Court thus maintains, as it did in *Wells Cargo*, that it should interpret an ambiguous provision of an insurance contract against the insurer, the drafter of the contract. 2012 WL 3112009, at *5. Here, where there is no factual dispute and only one interpretation of the contract that cuts against the insurer and in favor of the insured, the Court concludes that even if it found that the policy is ambiguous, coverage for damage to the footings and columns installed prior to the start date of the policy are still covered. The Court thus grants Big D's motion for partial summary judgment and denies American Zurich's cross-motion for the same.

**MEMORANDUM DECISION AND ORDER - 15**

## ORDER

**IT IS ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 23) is **GRANTED**.

2. Defendant's Cross-Motion for Partial Summary Judgment (Dkt. 36) is

   **DENIED**.

DATED: March 31, 2026

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 16**